# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

JODY RIZZO,

          *Plaintiff*,

v.

FIRST RELIANCE STANDARD LIFE
INSURANCE COMPANY, et al.

          *Defendants.*

Civil Action No.: 17-cv-745 (PGS)

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant First Reliance's Motion to Dismiss Plaintiff Jody Rizzo's Complaint pursuant Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF No. 4). In her Complaint, Plaintiff alleges that First Reliance wrongfully denied her request for survivorship benefits under her deceased husband's insurance coverage policy.

## BACKGROUND

On January 10, 2017 Plaintiff initiated this lawsuit against Defendants First Reliance Standard Life Insurance Company (hereinafter, "First Reliance") and Barnes and Noble, Inc. in the Superior Court of New Jersey, Ocean County. On February 3, 2017 First Reliance removed the matter to this Court based upon allegations concerning ERISA violations, and filed the present motion to dismiss.

Plaintiff Jody Rizzo is a beneficiary of a life insurance policy issued to Angelo Rizzo, her deceased husband (hereinafter, "Decedent"), and a long term disability (LTD) policy written by First Reliance. Decedent was a manager of one of the Barnes & Noble stores and was a participant in his employer's welfare benefit plan, which included short and long term disability benefits, and

1

Group Life benefits, all of which were insured by First Reliance. (Complaint ["Compl."] at ¶ 8). In October 2010. Decedent purchased additional life insurance through the First Reliance, worth approximately $188,000. (*Id.* at ¶ 11).

From 2004 through 2012, Decedent suffered with cardiomyopathy, hypertension, edema, tachycardia and congestive heart failure (*Id.* at ¶ 13). On November 12, 2012, Decedent received medical treatment for various health conditions, such as, chest pain, shortness of breath, palpitations, dizziness, tachardia and bilateral lower extremity edema. (*Id.* at ¶ 15). His cardiologist prescribed eleven medications. As a result, decedent could not work, and he received short and long term disability benefits from Defendant First Reliance. (*Id.* at ¶ 17).

On March 1, 2013, Decedent received a letter from First Reliance, indicating that his short term disability benefits would terminate on April 16, 2013, unless he provided an update from his physician, Dr. Riss, as to his continued inability to work. (*Id.* at ¶ 19). At Decedent's request, Dr. Riss completed the "Physician's Statement" wherein Dr. Riss declared that Decedent was "totally disabled," and it gave absolutely no indication that Decedent was capable of performing any type of work, sedentary or otherwise. (*Id.* at ¶¶ 23-24). In the March 1, 2013 letter, First Reliance also notified Decedent of his eligibility for a "waiver of premium" benefit under the Group Life Insurance coverage. This benefit was available to "totally disabled" individuals and entitled him to maintain life insurance coverage without paying premiums.

On March 20, 2013, Decedent applied for both total disability benefits and the waiver of premium benefit, due to his total disability. (*Id.* at ¶ 25). In late March 2013, Decedent communicated with Maureen Murray, a First Reliance employee, who approved Decedent's long term disability benefits; but also requested further medical documentation in October or November 2013. (*Id.* at ¶¶ 26, 30).

On October 9, 2013, First Reliance denied Decedent's waiver of premium application under the Group Life Insurance coverage. (*Id.* at ¶ 43). The basis for denial was First Reliance's conclusion that Decedent was not "totally disabled," as defined in the Group Life Policy. Basically, the letter stated that Decedent was not totally disabled because he could perform sedentary occupations; as such, he was not entitled to the waiver of premiums benefit. Specifically, the letter notes:

> "[w]e have found that as of November 8, 2012 through November 1, 2013 you are capable of sedentary work exertion. Since you are capable of sedentary work exertion, we referred your file to our vocational department to review for viable occupations that would be commensurate with your work history. Our vocational staff found the following viable sedentary occupations that you would be eligible for: Representative Supervisor; Personal Scheduler; Customer-Complaint Clerk; Information Clerk."

(ECF No. 4-2, "October 9th Letter," at 1). The letter explained to Decedent that he could request a review of this denial by submitting an appeal within 180 days of the receipt of the letter and provided instructions on how to submit such a review. (*Id.* at 2).

The next day, October 10, 2013, Dr. Riss submitted another report to First Reliance indicating Decedent's disability. The Complaint states:

> On October 10, 2013 Mr. Rizzo's primary care physician, Dr. Riss, completed the Defendant, First Reliance's, "ATTENDING PHYSICIAN'S STATEMENT SUPPLEMENTARY REPORT FOR CONTINUATION OF LONG TERM DISA1LITY BENEFITS". The form specifically asks "How long was or will patient be continuously totally disabled? (unable to work)." Dr. Riss responded stating that Mr. Rizzo's Coronary Artery Disease, Diabetes, Hyperparathyroidism and Peripheral Vascular Disease made him "continuously totally disabled and (unable to work) from November 8, 2012 through the present which was then October 10, 2013.

(Compl. at ¶ 31). On November 26, 2013, Dr. Riss submitted another report, again concluding that Decedent was totally disabled. (*Id.* at ¶ 32).

On February 24, 2014, Decedent died. That same day, Plaintiff contacted Melissa Conroy, a Barnes & Noble human resource representative, regarding survivor benefits. (*Id.* at ¶ 35). Conroy explained to Plaintiff that human resources could not discuss the policy until it was established that Plaintiff was a designated beneficiary under the policy. (*Id.*). On March 6, 2014, Plaintiff spoke with Christine Wild, a First Reliance Manager of Life Claims, who advised Plaintiff that she was being denied survivor benefits since Decedent did not qualify for the waiver of premium benefit. (*Id.* at ¶ 36). Wild followed up this conversation by writing to Plaintiff, summarizing their telephone call and enclosing the October 9th denial letter. (*Id.* at ¶ 42). According to Plaintiff, this is the first time she had ever seen the letter. (*Id.*).

In March 2014, Plaintiff retained attorney Alton Neff, Esq. to represent her for her life insurance benefits claim. (*Id.* at ¶ 60). However, after two years of inaction, Plaintiff fired Neff and retained new counsel, who on behalf of Plaintiff, wrote a letter on July 25, 2016 to First Reliance seeking to appeal the October 9, 2013 denial. (*Id.* at ¶¶ 60-62). First Reliance responded on August 12, 2016, indicating that it refused to reconsider the denial and noted that the 180 days of appeal period has lapsed. (*Id.* at ¶ 63).

Five months later, on January 10, 2017 Plaintiff initiated this lawsuit against First Reliance. Plaintiff alleges several causes of action including violation of the consumer fraud act; breach of implied covenant of good faith and fair dealing; bad faith denial of insurance benefits; breach of contract; claim for life insurance benefits pursuant to N.J.S.A. § 17B:27-24 and N.J.A.C. § 11:4-42; claim for life insurance benefits under 29 USC 1132(a)(1)(B); and claim for life insurance benefits under 29 U.S.C. § 1132(a)(3). Specifically, the Complaint alleges that the denial of the application of waiver of premium due to total disability is in error and wrong for several reasons:

4

1) The conclusion was made without the support of any of Decedent's physician's medical opinions (*Id.* at ¶ 52);

2) First Reliance had no medical evidence of its own to justify its decision (*Id.* at ¶ 53);

3) First Reliance continued to pay total disability benefits to Decedent until the date of his death (*Id.* at ¶¶ 55-57); and

4) Decedent died within the 180 day period of appeal (139 days after the October 9th letter); and Plaintiff's conversation with Ms. Wild of First Reliance could be sufficient notice of appeal to the denial of the application for waiver of premium payment.

**LEGAL STANDARD**

On a motion to dismiss for failure to state a claim pursuant to Federal Rule Civil Procedure 12(b)(6), the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can

prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2001).

"The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed. 1990)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*

## ANALYSIS

I. Plaintiff's State Law Claims

First Reliance seeks dismissal of Counts I through V of Plaintiff's Complaint, which allege claims under New Jersey law, since these claims are governed and preempted by ERISA. Specifically, First Reliance argues that the insurance policy issued by defendant is governed by ERISA because: (i) the intended benefits of the policy are life insurance benefits; (ii) the beneficiaries are identified in the policy; (iii) the source of financing benefits is the policy; and (iv) the procedures for receiving benefits are plainly stated in the policy. (Def.'s Br. at 5). Plaintiff responds that her state law claims are not governed by ERISA or, alternatively, fall within ERISA's "safe harbor" provisions. The Court is unpersuaded by Plaintiff's argument.

ERISA governs any employee benefit plan that is "established or maintained . . . by any employer engaged in commerce." *Shaver v. Siemens Corp.*, 670 F.3d 462, 475 (3d Cir. 2012) (quoting 29 U.S.C. § 1003(a)). "ERISA defines an employee welfare benefit plan as 'any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing [certain benefits] for its participants or their beneficiaries, through the purchase of insurance or otherwise.'" *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 290 (3d Cir. 2014) (citing 29 U.S.C. § 1002(1)). In determining whether a plan falls within ERISA's coverage, the Third Circuit has adopted the test set forth in *Donovan v. Dillingham*, 668 F.2d 1367 (11th Cir. 1982). *See Shaver*, 670 F.3d at 475. "Under *Donovan*, an ERISA plan 'is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Id.* (quoting *Donovan*, 668 F.2d at 1373). "The 'crucial factor' in determining whether a 'plan' has been established is 'whether the employer has expressed an intention to provide benefits on a regular and long-term basis.'" *Menkes*, 762 F.3d at 290 (quoting *Gruber v. Hubbard Bert Karle Weber, Inc.*, 159 F.3d 780, 789 (3d Cir. 1998)). Here, the Court has little trouble concluding, and Plaintiff appears to concede, that there exists an employee benefit plan, under ERISA. It is undisputed that short and long term insurance benefits and basic life insurance premiums were a part of Barnes & Noble's compensation package. (Compl. at ¶¶ 8-9). Having determined that the Barnes & Noble created a plan under ERISA, this Court next considers whether Plaintiff's state law claims are preempted.

"Section 1144(a) of ERISA defines the scope of ERISA preemption, providing ERISA preempts all state laws that 'relate to' employee benefit plans." *Tarn v. Unilever United States*,

No. 12-5577, 2013 U.S. Dist. LEXIS 76220, at *10-11 (D.N.J. May 29, 2013) (quoting *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995)). The Supreme Court has repeatedly made it clear that ERISA preemption is broad and that a state law "relates" to an ERISA plan "if it has a connection with or reference to such a plan." *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001); *see also Levine v. United Healthcare Corp.*, 402 F.3d 156, 164 (3d Cir. 2005). A "state law relates to an ERISA plan if among other things, the rights or restrictions" created by the state law "are predicated on the existence of . . . an [ERISA] plan." *Ragan v. Tri-Cnty. Excavating, Inc.*, 62 F.3d 501, 510-11 (3d Cir. 1995). Here, Plaintiff's Complaint includes claims for Consumer Fraud, Breach of Implied Covenant of Good Faith and Fair Dealing, Bad Faith, Breach of Contract and other state laws. Since all of these claims are predicated on Barnes & Noble's employee plan, they are preempted under ERISA. *See id.; see also*, *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) (state law bad faith claims are foreclosed by ERISA's civil enforcement scheme). Moreover, ERISA does not provide for treble, punitive or compensatory damages, which Plaintiff seeks. The Third Circuit has consistently held that all damages beyond those permitted by ERISA's exclusive remedial scheme are preempted. *See Pane v. RCA Corp.*, 868 F.2d 631, 635 n.2 (3d Cir. 1989) (noting that ERISA does not authorize an award for punitive damages); *Barber Union Life Ins. Co. of Am.*, 383 F.3d 134, 141 (3d Cir. 2004) (noting that damages available under state law are preempted by ERISA).

Finally, the Court is satisfied that Barnes & Noble's plan does not fall within ERISA's safe harbor provision. As a general rule, "[a] plan that satisfies the Safe Harbor Provision's standards will be deemed not to have been 'established or maintained by the employer,' and therefore will not be governed by ERISA." *Schneider v. UNUM Life Ins. Co. of Am.*, 149 F. Supp. 2d 169, 176

(E.D. Pa. 2001). Under the Safe Harbor provision, a plan will not be considered an "employee welfare benefit pan" if:

> (1) No contributions are made [to the plan] by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

*Id.* (citing 29 C.F.R. § 2510.3-1(j)). Here, when reviewing the Barnes & Noble's policy with First Reliance, the Court is satisfied that the Safe Harbor provision does not apply. (ECF No. 4-3, "Insurance Policy"). Under the terms of the Policy, employees were not required to contribute to the cost of basic life insurance and the Policy encompassed all eligible employees. (*Id.* at 1.0-1.1).[1] Plaintiff's contention that since she seeks to recover "voluntary additional life insurance coverage," her claims fall within the safe harbor provision is of no moment. *See Gross v. Sun Life Assur. Co. of Can.*, 734 F.3d 1, 7-8 (1st Cir. 2013); *see also Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 943 (9th Cir. 2008) ("So long as [the employer] pays for *some* benefits, ERISA

---

[1] The Insurance Policy is an integral document to the complaint, and it was considered in the disposition of this motion. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (internal quotation marks and citations omitted)).

applies to the whole plan, even if employees pay entirely for other benefits."). Simply put, because the record establishes that Barnes & Noble created a comprehensive package of insurance coverage, the Safe Harbor provision does not apply.

In sum, since ERISA preempts Plaintiffs' state law claims, Counts I through V are dismissed.

II. Plaintiff's ERISA Claims

First Reliance next seeks dismissal of Counts VI and VII of Plaintiff's Complaint, wherein Plaintiff alleges violations under ERISA. In Count VI, Plaintiff claims that under 29 U.S.C. §1132(a)(1)(b), she is a beneficiary, and therefore, permitted to bring suit for benefits due under the Plan. Alternatively, in Count VII, Plaintiff relies on 29 U.S.C. § 1132(a)(3) which allows a beneficiary to: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Because Plaintiff failed to exhaust the administrative remedies provided under the policy, First Reliance contends Plaintiff's ERISA claims must be dismissed.

ERISA claimants are required to exhaust administrative remedies prior to bringing suit to enforce terms of the plan. *D'Amico v. CBS Corp.*, 297 F.3d 287, 290-91 (3d Cir. 2002). The requirement is "strictly enforced." *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990). Since exhaustion of remedies is an affirmative defense, "the defendant bears the burden of proving failure to exhaust." *Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015) (citing *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007)).

Plaintiff argues that neither she nor her husband ever received the October 9, 2013 letter denying the Rizzo's application for waiver of life insurance premium due to total disability. The

defendant asserts that the mailbox rule should apply. *See Meiercherek v. Miller*, 147 A.2d 406, 408 (Pa. 1959) ("The overwhelming weight of statistics clearly indicates that letters properly mailed and deposited in the post office are received by the addressee"); *Philadelphia Marine Trade Ass'n-Int'l Longshoremen Assoc. Pension Fund Commissioner of the Internal Revenue Serv.*, 523 F.3d 140, 147 (3d Cir. 2008). Generally, "[i]f a document is properly mailed, the court will presume the United States Postal Service delivered the document to the addressee in the usual time" *Id*. "A party relying on the presumption must present sufficient evidence to establish that the letter was actually mailed. *Id*. Once the presumption is established, "the party alleging that it did not receive the letter has the burden of establishing such, and merely asserting that the letter was not received, without corroboration, is insufficient to overcome the presumption of receipt." *Id*.

Here, when reviewing the record in the light most favorable to Plaintiff, the Court is satisfied for purposes of this motion to dismiss that Plaintiff exhausted administrative remedies. While Plaintiff contests ever receiving the October 9th denial letter, there were subsequent communications between First Reliance and Decedent's doctor, which should have placed First Reliance on notice that she was contesting the denial of the waiver of premium benefit. For example, after the date of the denial letter, Dr. Riss forwarded two written reports (October 10, 2013 and November 26, 2013), which both conclude that Decedent was totally disabled. Moreover, on March 6, 2014, still within the 180 appeal period, Plaintiff spoke with Ms. Wild, a First Reliance Life Claims manager, questioning First Reliance's denial of survivor benefits. This too can reasonably be interpreted as oral notice of appeal First Reliance's denial. Generally, the purpose of the exhaustion requirement is to give First Reliance an opportunity to settle claims before a suit is brought, *see Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir.

2002), while Plaintiff may not have submitted a specific formal notice of appeal, there is sufficient evidence presented to conclude at least on a motion to dismiss that First Reliance was aware of Plaintiff's intent to contest the denial of the waiver of premium benefit. As such, the Court finds the letters from Dr. Riss and the conversation with Ms. Wild of First Reliance gave sufficient notice of the appeal.

Alternatively, First Reliance seeks dismissal of the breach of fiduciary claim in Count VII, since "a claimant may not simultaneously pursue claims under Sections 1132(a)(1)(B) and (a)(3)." (Def's Br. at 9). In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court briefly discussed a beneficiaries' ability to seek relief under Section 1132(a)(3). The Court explained that Section 1132(a)(3) was a "catchall" provision, "offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id.* at 512. However, the Court cautioned that, where "Congress elsewhere provided adequate relief for a beneficiary's injury," relief under Section 1132(a)(3) would likely be unnecessary. *Id.* at 515. Courts have been split in determining whether *Varity* precludes beneficiaries from simultaneously seeking relief under Sections 1132(a)(3) and 1132(a)(1)(B). *See Greene v. Hartford Life & Accident Ins. Co.*, No. 13-6033, 2014 U.S. Dist. LEXIS 126628, at *7-8 (E.D. Pa. Sept. 10, 2014) (identifying circuit split). In *Greene*, the district court dismissed the plaintiff's Section 1132(a)(3) claim where it sought "precisely the same remedy" as his Section 1132(a)(1)(B). *Id.* at *9; *see also Miller v. Mellon Long Term Disability Plan*, 721 F. Supp. 2d 415, 423-24 (W.D. Pa. 2010) (concluding that since the plaintiff's claim for relief under Section 1132(a)(3) was identical to her claim for relief under Section 1132(a)(1)(B), there was no reason to invoke the catch-all provision.). The Court reaches the same conclusion here, in Count VI of Plaintiff's complaint, she seeks, among other things, for First Reliance to convert the life insurance policy so that she can receive the life

insurance proceeds pursuant Section 1132(a)(1)(B). (Compl. at ¶ 95). Likewise, under Count VII, Plaintiff relies on Section 1132(a)(3) in seeking for First Reliance "to timely convert their life insurance benefits." (*Id.* at ¶ 97). Since this relief is already sought under Count VI, there is no reason for Plaintiff to rely on Section 1132(a)(3); as such, Count VII is dismissed.

Finally, First Reliance seeks dismissal of Plaintiff's ERISA's claims as being time barred by the contractual terms of the policy. Under the terms of the policy, "no legal action may be brought against us to recover on this Policy . . . after three (3) years from the time written proof of loss is received." (Insurance Policy at 10.0). Here, First Reliance contends that the clock began to run when the October 9th denial letter was sent. The Court disagrees. Plaintiff's claim is for survivorship benefits under the life insurance policy. Since First Reliance continued to pay total disability benefits until the date of Decedent's death, it is probable that the Rizzos believed the waiver of premium was authorized. As such, since the first letter denying life insurance benefits was on March 6, 2014, the Court concludes that the suit was timely filed.

III. Jury Demand

Defendant moves to strike the jury demand. Since ERISA does not permit a jury trial, demand for a jury trial is stricken. *McDonald v. Horizon Blue Cross*, 2011 U.S. Dist. LEXIS 10893 *31-37 (December 23, 2011). *Eichorn v. AT&T*, 484 F. 3d 644, 656 (3d Cir. 2007).

## ORDER

It is on this 28th day of December, 2017;

Ordered that Defendant's motion to dismiss is GRANTED with regards to Counts I – V and VII; and it is further

Ordered that Defendant's motion to dismiss is DENIED with regard to Counts VI; and it is further

Ordered that the motion to strike the jury is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.