# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JODY RIZZO,

*Plaintiff,*

v.

FIRST RELIANCE STANDARD LIFE
INSURANCE COMPANY, *et al.*

*Defendants.*

Civil Action No.: 17-cv-00745 (PGS)(DEA)

**MEMORANDUM
AND ORDER**

**SHERIDAN, U.S.D.J.**

This matter is before the Court on Defendant First Reliance Standard Life Insurance Company's ("Defendant" or "Standard Life") Motion for Summary Judgement (ECF No. 27) and Plaintiff Jody Rizzo's ("Plaintiff" or "Mrs. Rizzo") Cross Motion for Summary Judgment (ECF No. 30). In this action, Plaintiff alleges that Defendant wrongfully denied her request for life insurance benefits under her deceased husband's group life insurance policy in violation of the Employee Retirement Income Security Act ("ERISA"). In the instant motions, the parties dispute: (1) whether Plaintiff was required but failed to exhaust administrative remedies prior to bringing this ERISA action; and (2) whether Defendant wrongfully denied Plaintiff's request for benefits.

## BACKGROUND

On January 10, 2017, Plaintiff initiated this lawsuit against Defendant and Barnes and Noble, Inc. in the Superior Court of New Jersey, Ocean County. On February 3, 2017, Defendant removed the matter to this Court based upon allegations concerning ERISA violations. (ECF No. 1). Plaintiff's seven-count complaint included five claims under New Jersey law (Counts I-V) and two claims under ERISA (Counts VI-VII).

On February 8, 2017, Defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted. (ECF No. 4). On December 28, 2017, the Court granted in part and denied in part Defendant's motion to dismiss. (ECF No. 11). Specifically, the Court dismissed all of Plaintiff's state law claims (Counts I-V) on ERISA preemption grounds, as well as dismissed Plaintiff's "catchall" ERISA claim under 29 U.S.C. § 1132(a)(3) (Count VII). (*See id.*). But, the Court did not dismiss Count VI, or Plaintiff's claims for the wrongful denial of benefits brought under 29 U.S.C. §1132(a)(1)(b), finding that "when reviewing the record in the light most favorable to Plaintiff, the Court [was] satisfied for purposes of [the] motion to dismiss that Plaintiff exhausted administrative remedies." (ECF No. 11 at 11). After engaging in discovery, the issue of whether Plaintiff exhausted administrative remedies is once again in contention. The parties also disagree as to whether Defendant's denial of benefits was wrongful.

## FACTS

On October 9, 2009, Angelo Rizzo, Plaintiff's late husband, was diagnosed by Dr. Riss, his family doctor, with carotid disease, diabetes, hypertension.[1] (Plaintiff, Jody Rizzo's, Statement of Facts ("Plaintiff's Undisputed Facts") ¶ 1, ECF No. 30-2). On or about November 7, 2012, Mr. Rizzo began experiencing shortness of breath and dizziness while shoveling snow, which he reported to Dr. Riss. (*Id.* ¶ 3). Dr. Riss referred Mr. Rizzo to his cardiologist. (*Id.*). Upon referral, on or about November 12, 2012, Mr. Rizzo was diagnosed with chest pain, shortness of breath, palpitations, dizziness, edema, diabetes type II, cardiomyopathy, hypertension, obesity, and lymphedema. (*Id.* ¶ 4). At or around this time, Mr. Rizzo's poor health prompted him to cease working for Barnes & Noble, where he was employed as an Assistant Store Manager. (*See* Defendant, First Reliance Standard Life Insurance Company's Local Rule 56.1 Statement in

---

[1] All facts set forth in this section are undisputed unless otherwise noted.

Support of its Motion for Summary Judgment Under ERISA ("Defendant's Undisputed Facts") ¶ 7, ECF No. 27-6). Fifteen months later, on February 24, 2014, Mr. Rizzo passed away at the age of 42. (Plaintiff's Undisputed Facts ¶ 6).

Defendant issued Barnes & Noble, Mr. Rizzo's once-employer, two separate group insurance policies, including: (1) a long term disability policy; and (2) a group life insurance policy. (Defendant's Undisputed Facts ¶¶ 1, 2, 4). This lawsuit involves only Plaintiff's claim for benefits under the group life insurance policy (the "Policy"). (*Id.* ¶ 9).

The Policy included a waiver of premium provision ("WOP") in the event of "total disability." (*Id.* ¶ 4). The WOP benefit pays for a plan participant's life insurance premium if that person becomes "totally disabled." Important to this lawsuit, the Policy defined total disability as a "complete inability to engage in any type of work for wage or profit for which he/she is suited by education, training or experience." (*Id.* ¶ 6).

By letter dated March 1, 2013, Defendant wrote to Mr. Rizzo informing him that he might be eligible for WOP benefits under the Policy. (*Id.* ¶ 10). Defendant provided Mr. Rizzo with instructions on how to apply for WOP benefits, as well as explained that Mr. Rizzo's employer could only maintain his life insurance coverage by paying premiums for seven additional months. (*Id.* ¶¶ 11, 12). Because Mr. Rizzo was no longer working at this point, Defendant explained that coverage would then end unless his WOP application was approved or if he converted the group life insurance policy into an individual policy within thirty-one days of any denial of his WOP application. (*Id.* ¶ 13).

On or about March 18, 2013, Mr. Rizzo applied for WOP benefits, which was received by Defendant on March 27, 2013. (Plaintiff's Undisputed Facts ¶¶ 8, 11). On October 9, 2013, Mr. Rizzo's WOP application was denied. (Defendant's Undisputed Facts ¶ 15). A letter dated

October 9, 2013 (the "October 9th Letter") presented the basis for denial, which was Defendant's

conclusion that Mr. Rizzo was not "totally disabled" pursuant to definition of the term as provided

above. Specifically, the letter stated that Mr. Rizzo was not totally disabled because he could

perform sedentary occupations; as such, he was not entitled to WOP benefits:

> We have found that as of November 8, 2012 through November 1, 2013 you are capable of sedentary work exertion. Since you are capable of sedentary work exertion, we referred your file to our vocational department to review for viable occupations that would be commensurate with your work history. Our vocational staff found the following viable sedentary occupations that you would be eligible for: Representative Supervisor; Personal Scheduler; Customer-Complaint Clerk; Information Clerk.

(*See* LTD 432-34, ECF No. 27-5). The October 9th Letter also explained that Mr. Rizzo was

entitled to request a review of this denial by submitting an appeal within 180 days of the receipt

of the October 9th Letter, or by April 7, 2014, and provided instructions on how to submit such a

review:

> You may request a review of this determination by submitting your request in writing to:
>
> First Reliance Standard Life Insurance Company
> Quality Review Unit
> P.O. Box 7698
> Philadelphia, PA 19101-7698
>
> This written request for review must be submitted within 180 days of your receipt of this letter. Your request should state any reasons why you feel this determination is incorrect, and should include any written comments, documents, records, or other information relating to your claim for benefits. Only one review will be allowed, and your request must be submitted within 180 days of your receipt of this letter to be considered.
>
> Under normal circumstances, you will be notified in writing of the final determination within 45 days of the date we receive your request for review. If we determine that special circumstances

require an extension of time for processing, you will ordinarily be
notified of the decision no later than 90 days of the date we receive
your request for review.

(LTD433). Mr. Rizzo, nor Plaintiff, appealed this denial within 180 days of the October 9th Letter.

Rather, Plaintiff did not attempt to appeal from this decision until July 25, 2016. (Defendant's

Undisputed Facts ¶ 25).

The parties dispute whether Defendant mailed the October 9th Letter to Plaintiff on October

9, 2013. While Defendant contends that the October 9th Letter was indeed mailed to Plaintiff on

or around October 9, 2013, Plaintiff alleges that she only found out about the denial of WOP

benefits, as provided in the October 9th Letter, upon contacting Defendant on the day of Mr.

Rizzo's passing, or on February 24, 2014. Plaintiff further contends that she did not receive the

October 9th Letter until March 6, 2014 and only then upon her request.

The foregoing facts bring about a critical dispute in the instant motions, that is, whether

Plaintiff exhausted administrative remedies in light of the undisputed fact that she, nor her

husband, appealed Defendant's decision to deny her WOP application within 180 days of the

October 9th Letter. As discussed more comprehensively below, Defendant's position is that

Plaintiff's failure to appeal the denial of benefits within 180 days is dispositive and warrants

dismissal of this action. Plaintiff rebuts Defendant's contention by setting forth several reasons as

to why Plaintiff was *not* required to exhaust administrative remedies prior to bringing this lawsuit,

including, *inter alia*, because Defendant allegedly violated ERISA's 90-day adverse benefit

notification requirement. (Pl. Br. at 21, ECF No. 30-3).

Separately, the parties also dispute whether Defendant's adjudication and denial of Mr.

Rizzo's WOP application was wrongful, as analyzed under either a *de novo* or arbitrary and

capricious standard of review. In particular, Plaintiff argues that Defendant's failure to review all

of the medical records and internal files prior to making a decision to deny Mr. Rizzo's WOP application renders it wrongful under either standard. Defendant rebuts that the decision to deny Mr. Rizzo's application was appropriately based on written submissions from Dr. Riss, Mr. Rizzo's family doctor, indicating that Mr. Rizzo can still perform sedentary work. (*See* Defendant's Br. at 12-13, ECF No. 27-7).

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657

(3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor . . . that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x 222, 227 (3d Cir. 2007).

## ANALYSIS

### I.    FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

ERISA does not specifically require that a participant or beneficiary exhaust a plan's internal review procedures before a lawsuit can be filed. *Amato v. Bernard*, 618 F.2d 559, 566 (9th Cir. 1980). However, due to ERISA's provision for the administrative review of benefit claim denials, courts have read an exhaustion of administrative remedies requirement into the statute. *See Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990) (collecting cases). The exhaustion requirement is "strictly enforced." *Id.* at 916. Since exhaustion of remedies is considered an affirmative defense, "the defendant bears the burden of proving failure to exhaust." *Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015) (citing *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007)). A finding that claimant failed to exhaust the review procedures provided by an ERISA plan may result in summary judgment dismissal. *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002).

There are, however, limited exceptions to the exhaustion of administrative remedies requirement. Some relevant exceptions include: (1) where resorting to the administrative procedure provided for by a plan would be futile (*see id.*); (2) where a claimant had been denied

meaningful access to the plan's claim procedure (*see Majka v. Prudential Ins. Co. of Am.*, 171 F. Supp. 2d 410, 414 (D.N.J. 2001)); and (3) where a plan expressly requires exhaustion but fails to establish or follow claims procedures consistent with the applicable ERISA regulatory requirements, permitting a court to deem claimants to have exhausted their administrative remedies (*see Campbell v. Sussex Cty. Fed. Credit Union*, 602 F. App'x 71, 75 (3d Cir. 2015); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 16-9253, 2017 WL 3610486, at *3 (D.N.J. Aug. 22, 2017); *Puzzo v. Metro. Life Ins. Co.*, No. 15-3190 (FLW)(LHG), 2016 WL 1224029, at *4 (D.N.J. Mar. 29, 2016)).

Here, the undisputed facts demonstrate that Mr. Rizzo's claim for benefits (the WOP application) was denied by Defendant on October 9, 2013. (Defendant's Undisputed Facts ¶ 15). Pursuant to the terms provided in the October 9th Letter—of which the date of receipt is in dispute—Mr. Rizzo, or Plaintiff, had 180 days to appeal Defendant's denial of benefits. There is no dispute that Plaintiff failed to appeal within 180 days. In fact, the parties agree that Plaintiff did not attempt to appeal from this decision until July 25, 2016. (Defendant's Undisputed Facts ¶ 25). Defendant argues that these facts afford it an affirmative defense to Plaintiff's remaining claim under ERISA on the grounds that Plaintiff failed to exhaust administrative remedies. (Defendant's Br. at 6-12). Plaintiff rebuts Defendant's contention by arguing that certain exceptions to the administrative exhaustion requirement excuse her delay in appealing the denial. (Pl. Br. at 20-26; Pl. Reply Br. at 5-11).

In her moving brief, Plaintiff argues that Defendant's failure to follow claims procedures consistent with applicable ERISA regulatory requirements, as well as Defendant's own policy[2],

---

[2] Under Defendant's "Claims Department Administrative Manual, Defendant's affords itself 45 days to notify a claimant of an adverse benefit determination. (Plaintiff's Undisputed Facts ¶ 27).

permit this Court to deem Plaintiff to have exhausted her administrative remedies. (*See* Pl. Br. at 20-23). 29 C.F.R. § 2560.503-1(l)(1) provides:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

*Id.*; *Campbell*, 602 F. App'x at 75; *see also Univ. Spine*, 2017 WL 3610486, at *3; *Puzzo*, 2016 WL 1224029, at *4. Here, Plaintiff contends that Defendant violated ERISA's 90-day adverse benefit determination notification requirement. *See* 29 C.F.R. § 2560.503-1(f)(1) ("[I]f a claim is wholly or partially denied, the plan administrator shall notify the claimant . . . of the plan's adverse benefit determination within a reasonable period of time, but not later than 90 days after receipt of the claim by the plan, unless the plan administrator determines that special circumstances require an extension of time for processing the claim."). In particular, Plaintiff argues that the undisputed facts demonstrate that Mr. Rizzo made his claim for WOP benefits on or about March 20, 2013. (Defendant's Undisputed Facts ¶ 14). And, his claim was denied on October 9, 2013, or approximately 203 days later. (*Id.* ¶ 15). Accordingly, Plaintiff contends that Defendant's 203-day decision period violated ERISA's 90-day adverse benefit determination notification requirement (29 C.F.R. § 2560.503-1(f)(1)), and this Court should therefore deem Plaintiff to have exhausted their administrative remedies pursuant to 29 C.F.R. § 2560.503-1(l)(1).

In response, Defendant does *not* refute that its claim denial was untimely under ERISA. (*See* Defendant' Opp. Br. at 3-4, ECF No. 35-3). Rather, Defendant contends that its "timing of the denial is irrelevant" to the exhaustion analysis. (*Id.* at 4). The Court disagrees. The Third Circuit has held that "when a plan administrator 'fail[s] . . . to establish or follow claims procedures' in denying a claim for benefits, the 'claimant shall be deemed to have exhausted the

administrative remedies under the plan.'" *Campbell*, 602 F. App'x at 75 (quoting 29 C.F.R. § 2560.503–1(l)). Again, there is no dispute that Defendant failed to follow ERISA-mandated claim procedures when issuing its denial approximately 203 days after Mr. Rizzo's WOP application, that is, *113 days after the expiration of ERISA's 90-day adverse determination period*. Under these circumstances, the Court finds that Plaintiff's administrative remedies were deemed exhausted upon the expiration of the 90-day adverse determination period, and she was free to bring this lawsuit at any time thereafter. *Id.*; *see also Neathery v. Chevron Texaco Corp. Grp. Acc. Policy No. OK826458*, No. 05 CV 1883 JM AJB, 2006 WL 4690829, at *2 (S.D. Cal. Feb. 14, 2006).[3] Accordingly, the Court will move forward with an analysis of Plaintiff's claim under 29 U.S.C. §1132(a)(1)(b) (Count VI).

## II. PLAINTIFF'S DENIAL OF BENEFITS CLAIM

### i. STANDARD OF REVIEW

As an initial matter, the parties contest the proper standard of review of Defendant's denial of benefits. According to Plaintiff, the Court should review this matter *de novo* because Defendant's 203-day adverse claim determination violated ERISA and Defendant's own policies. (*See* Pl. Br. at 7-15). Defendant, however, contends that the arbitrary and capricious standard is appropriate since it reserved itself with discretion to determine eligibility for benefits under the plan. (Defendant's Br. at 5).

Under Section 502(a)(1)(B) of ERISA, a plan participant may bring a civil action "to recover benefits due to him [or her] under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). It is well-established that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under

---

[3] Having already determined that Plaintiff was not required to exhaust administrative remedies, the Court will not consider the merits of any other asserted grounds for excusing exhaustion, including, for example, futility or the denial of meaningful access to the plan's claim procedure.

a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, "[w]hen a plan grants its administrator such discretionary authority, trust principles make a deferential standard of review appropriate and we review a denial of benefits under an 'arbitrary and capricious' standard." *Fleisher v. Std. Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (internal quotation marks and citation omitted). Under this narrow standard of review, "a court can overturn the decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009). "The scope of review under the arbitrary and capricious standard is 'narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" *Becknell v. Severance Pay Plan of Johnson & Johnson & U.S. Affiliated Companies*, 644 F. App'x 205, 210 (3d Cir. 2016).

We agree with Defendant that the Policy explicitly grants it discretionary authority to determine eligibility for benefits. (*See* AR22, ECF No. 2703 ("First Reliance Standard Life shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plain and the insurance policy and to determine eligibility for benefits.")). Ordinarily, then, the Court would review its denial of benefits under an arbitrary and capricious standard, which is deferential. *Fleisher*, 679 F.3d at 120. Plaintiff, however, argues that even though the plan grants Defendant discretionary authority to determine eligibility for benefits, Third Circuit jurisprudence counsels that *de novo* review is warranted here due to Defendant's failure to respond to Mr. Rizzo's claim for benefits (*i.e.*, the WOP application) within the statutory 90-day period. (Pl. Br. at 8). The Court disagrees.

11

Despite Defendant's untimely eligibility determination, the Court finds that "[Defendant's] actions in the present case do not constitute a failure to exercise discretion, as [to] warrant[ ] *de novo* review." *Becknell*, 644 F. App'x at 212 (plan administrator's failure to issue a timely decision to an administrative appeal did not warrant *de novo* review). While it is true that "[w]here a trustee fails to act or to exercise his or her discretion, *de novo* review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer," *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002), Defendant's untimely decision here did not constitute a complete "failure to act or to exercise discretion." *Gritzer* is instructive. There, the Third Circuit found that because the plan administrator "never made any effort to analyze appellants' claims much less to advise them of what that analysis disclosed until after [the] litigation was filed," *de novo* review was warranted. *Id.* at 295-96. Conversely, in *Becknell*, the Third Circuit held that although the plan administrator acted with "inexcusable" delay in rendering an appeal decision, *de novo* review was not warranted because the plan administrator exercised its discretion in denying benefits and the plaintiff was made aware of this decision well before instituting the litigation. Here, it is undisputed that Defendant engaged in at least some analysis of Mr. Rizzo's claim before making its determination in October 2013. It is also undisputed that Plaintiff was made aware of Defendant's exercise of discretion in denying the WOP application years before instituting this litigation. Thus, *de novo* review is not warranted here, and the Court will review Plaintiff's claim under an arbitrary and capricious standard. *See Meyers v. GE Grp. Life Assur. Co.*, No. CIV.A. 04-5488 (JBS), 2006 WL 680993, at *10 (D.N.J. Mar. 10, 2006) (refusing to analyze a claim under

a *de novo* standard of review where the defendant failed to render a decision on plaintiff's eligibility within the time limits established by ERISA.).[4]

A modified arbitrary and capricious standard is proper, however, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest." *Id.* at *8 (quoting *Firestone Tire & Rubber Co.,* 489 U.S. at 115). Here, Defendant concedes that since Defendant "is . . . responsible for paying any benefits owed [under the plan], a structural conflict of interest." (Defendant's Br. at 5). Where, as here, a structural conflict of interest exists, "the governing standard requires the plaintiff to show that the denial of benefits was arbitrary and capricious, with a conflict of interest as simply one factor for the court's consideration." *Dunn v. Reed Grp., Inc.*, No. CIV. 08-CV-1632 FLW, 2009 WL 2848662, at *9 (D.N.J. Sept. 2, 2009). Thus, the Court will consider the conflict of interest as one of several factors in its analysis. *See Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 526 (3d Cir. 2009).

ii.   DENIAL OF BENEFIT ANALYSIS

Plaintiff argues that Defendant's decision to deny the WOP benefits was arbitrary and capricious because: (1) Defendant failed to properly consider all of the medical information that was available to it; (2) Defendant violated certain provisions under ERISA; and (3) Defendant's conflict of interest. The Court will address each of Plaintiff's arguments in turn.

A.   FAILURE TO CONSIDER MEDICAL INFORMATION

Plaintiff argues that Defendant's denial of Mr. Rizzo's WOP application on October 9, 2013 was based solely upon one "stale" six-month old note from Dr. Riss. (Pl. Br. at 3). On or

---

[4] To the extent that Plaintiff argues that *de novo* review is warranted because she never received a claim denial, the Court finds that contention to be meritless. There is no dispute that Plaintiff received a copy of the October 9th Letter denying the claim on March 6, 2014. (*See* Plaintiff's Undisputed Facts ¶ 15).

about April 25, 2013, Dr. Riss completed the "note," or an Attending Physician's Statement. (AR110, Dkt. No. 27-3). In that Attending Physician's Statement, Dr. Riss opined that Mr. Rizzo could not lift anything over fifty pounds. (*Id.*). Based on Dr. Riss's opinion, Defendant determined that Mr. Rizzo was not eligible for the WOP benefit because his inability to lift anything over 50 pounds would not preclude him from sedentary work and, as such, he was not totally disabled. (Defendant's Br. 12-13). Plaintiff contends that Defendant's adjudication of the claim based solely upon Dr. Riss's April 25, 2013 Statement was arbitrary and capricious because it failed to consider: (i) Defendant's subsequent investigation into Mr. Rizzo's work capabilities in connection with his claim for long term disability benefits; and (ii) subsequent medical diagnoses. Specifically, Plaintiff argues:

> In making its decision [Defendant] completely disregarded the following: (1) There was an ongoing and in depth "Residual Employability Analysis" investigation into Mr. Rizzo's residual work capacities being conducted by [Mary A. Hess, vocational case manager with Disability Care Management Professionals, Inc.] who clearly stated that it was not possible to ascertain Mr. Rizzo's physical capacities without updated medical records and opinions; (2) Ms. Hess was actively engaged in obtaining Mr. Rizzo's health records and opinions as to Mr. Rizzo's residual work capacities when defendant denied Mr. Rizzo's WOP claim; (3) On September 24, 2013 Mr. Rizzo was diagnosed with 'Congestive Heart Failure' and was placed on new medications; (4) On September 24, 2013 Mr. Rizzo also saw his endocrinologist and with high blood sugar, and high blood pressure and was again placed on new medications; (5) that on September 27, 2013 Ms. Hess was advised by the defendant to suspend her efforts in the Residual Employability Analysis into Mr. Rizzo's residual work capacities "*so that a medical determination of Mr. Rizzo's physical capacities can be obtained*" demonstrating that the defendant had absolutely no idea of Mr. Rizzo's "physical capacities" were on September 27, 2013; and (6) On September 30, 2013 defendant's disability adjuster, Maureen Murray, wrote a letter to Dr. Riss to help "*determine whether the clinical condition of [Mr. Rizzo] is disabling*" and failed to wait for that medical opinion prior to denying Mr. Rizzo's WOP claim [on October 9, 2013].

(Pl. Br. at 5-6) (modifications in original).

In response, Defendant argues that Ms. Hess's Residual Employability Analysis performed in connection with Mr. Rizzo's application for long term disability benefits is not dispositive with respect to Defendant's WOP claim determination. In particular, Defendant's note that while it coordinated its review of Mr. Rizzo's WOP and long term disability claim, the eligibility standards governing the claims were different. To be eligible for long term disability benefits, Mr. Rizzo's must have been unable to perform the duties of his "regular occupation." In contrast, to be eligible for WOP benefits, Mr. Rizzo must have been unable to perform the duties of *any* occupation. (Defendant's Br. at 9-10).

Defendant further argues that Plaintiff's position that it should have waited to make a decision on Mr. Rizzo's WOP claim until additional medical records could be provided is "ironic" given that their October 9, 2013 denial was already late. (*Id*. at 10-11). Defendant's also argue that Mr. Rizzo's subsequent diagnoses and changes to his medications are not proof of a disability, and therefore do not prove eligibility. (*Id*. at 11). Defendant also points to a November 26, 2013 report from Dr. Riss indicating that he thought Plaintiff may be able to return to work on March 31, 2014. (*Id*. at 11). This November 26, 2013 report, however, came after Defendant's October 9, 2013 claim denial.

As stated above, under the arbitrary and capricious standard, Defendant's claim denial will be upheld if it was reasonable and "supported by substantial evidence." *Dunn*, 2009 WL 2848662, at *11. Here, the undisputed facts demonstrate that Defendant's October 9, 2013 initial decision to deny Mr. Rizzo's WOP application was primarily, if not solely, based upon Dr. Riss's April 25, 2013 Attending Physician's Statement indicating that Mr. Rizzo cannot lift anything over 50 pounds. (*See, e.g.*, Defendant's Br. at 12-13). Defendant's inexplicably failed

to review or consider any medical information in the intervening period from the April 25, 2013 Statement and its October 9, 2013 claim denial. Under these circumstances, the Court finds that record supports a finding that Defendant's denial was unreasonable and unsupported by substantial evidence.

The Defendant's own Claims Department Administrative Procedures Manual (the "Manual") makes clear that in determining eligibility for the benefit, Defendant was required to consider "all of the information in the claim file, *including but not limited to*: (1) Attending Physician Statement(s) or other completed medical forms; (2) medical records; (3) functional capacity evaluation(s); (4) independent medical examination(s); and (5) other relevant information. (Rizzo-Discovery-004, ECF No. 30-4). Defendant's briefing fails to clearly state if (or how) any other documents in the record—beside Dr. Riss's April 25, 2013 Statement—were considered prior to its October 9, 2013 denial. It is unclear why Defendant chose to rest its decision primarily, if not solely, upon Dr. Riss's Attending Physician Statement, and essentially disregard all of the other information that was, or could have been made, available to Defendant before it denied Mr. Rizzo's WOP application on October 9, 2013. The Court's concern is only exacerbated by Defendant's concession that Mr. Rizzo's WOP application and long term disability application were coordinated, further evidencing that Defendant likely had, but chose to ignore, additional medical information acquired after Dr. Riss's April 25, 2013 Attending Physician Statement and before its October 9, 2013 denial. Moreover, the Court finds persuasive Plaintiff's argument that Defendant's decision to solely rely upon Dr. Riss's six-month-old Attending Physician Statement in light of the serious diagnoses and symptoms included in that same Statement, weigh in favor of finding Defendant's claim denial unreasonable.

**B.    VIOLATIONS OF ERISA**

Plaintiff next argues that Defendant's denial of benefits was arbitrary and capricious in light of: (1) Defendant's alleged violation of ERISA's 90-day adverse benefit determination notification requirement and Defendant's own 45-day notice requirement; and (2) a violation of ERISA § 503 in connection with the particular language provided in both the October 9th Letter and March 6, 2014 letter. (Plaintiff's Br. at 18). As to the former, the Court has already determined that Defendant's denial was untimely. *See supra* at Point I. Accordingly, Defendant's failure to render a timely denial weighs against the propriety of its denial. *Univ. Spine Ctr*, 2017 WL 3610486, at *5 ("[A] plan administrator's failure to comply with 29 C.F.R. § 2560.503-1 . . . shields the claimant from a finding that he or she failed to exhaust administrative remedies, and may be probative of whether a denial of benefits was arbitrary and capricious.").

With respect to the former, Plaintiff argues that nothing in Defendant's denial letters: (1) identifies Mr. Rizzo diagnoses; or (2) identifies what evidence formed the basis of Defendant's conclusion that Mr. Rizzo was capable of sedentary work exertion.    (Pl. Br. at 18-19). Accordingly, Plaintiff argues that the denial letters are insufficient pursuant to ERISA § 503. (*Id.* at 19).

ERISA § 503 provides, in pertinent part, that every employee benefit plan shall: "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). Pursuant to this section, the Secretary of Labor has established that written notice of denial of a claim must:

> provide to every claimant who has been denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

> (1) The specific reason or reasons for the denial;

(2) Specific reference to pertinent plan provisions on which the denial is based;

(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f); *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000).

Based on the Court's review of the October 9th Letter and the subsequent March 6, 2014 letter, attaching the October 9th Letter, the Court is satisfied that they comply with ERISA § 503. In particular, the October 9th Letter provides: (1) the specific reason for denial (*i.e.*, Mr. Rizzo was capable of performing sedentary work); (2) a specific reference to the provision on which the denial is based (*i.e.*, the "Waiver of Premium in Event of Total Disability" provision); as well as (3) additional information regarding Defendant's appeal review procedure. (AR119-20, ECF No. 27-3). Accordingly, the content of Defendant's denial letters will not weigh in favor of finding that Defendant's benefit denial was arbitrary and capricious.

## C. CONFLICT OF INTEREST

As discussed above, Defendant concedes that since Defendant "is . . . responsible for paying any benefits owed [under the plan], a structural conflict of interest." (Defendant's Br. at 5). Where, as here, a structural conflict of interest exists, "the governing standard requires the plaintiff to show that the denial of benefits was arbitrary and capricious, with a conflict of interest as simply one factor for the court's consideration." *Dunn*, 2009 WL 2848662, at *9. Thus, the structural conflict of interest is another factor weighing in favor of finding that Defendant's denial of the WOP benefits was arbitrary and capricious.

### D.   BALANCING OF FACTORS AND REMEDY

In considering the totality of the facts discussed above, the Court finds that Defendant's denial of Mr. Rizzo's WOP application was arbitrary and capricious. The Court gave significant weight to the fact that Defendant failed to consider medical information available for its review before making a benefit determination. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115, 128 S. Ct. 2343, 2350, 171 L. Ed. 2d 299 (2008) ("ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator . . . [and] underscores the particular importance of accurate claims processing by insisting that administrators provide a full and fair review of claim denials.") (citation and internal quotation marks omitted). Specifically, Defendant seemingly turned a blind eye to information that was, or could have been made, available to it between Dr. Riss's April 25, 2013 Attending Physician Statement and its October 9, 2013 denial. As provided in its Manual, Defendant was required to consider all information related to Mr. Rizzo's health before making an initial determination, including "medical records" and any "other relevant information." (Rizzo-Discovery-004, ECF No. 30-4). The Court therefore believes that this, among the other facts discussed above, demonstrate that Defendant's decision to deny Mr. Rizzo's WOP application was not the product of reasoned decision-making and substantial evidence. *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 856 (3d Cir. 2011). Thus, the Court concludes that Plaintiff is entitled to the $188,000.00 in which the life insurance policy at issue in this case offered Mr. Rizzo. (Plaintiff's Undisputed Facts ¶ 76)

## CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment (ECF No. 27) is

DENIED. Plaintiff's Motion for Summary Judgment (ECF No. 30) is GRANTED. Plaintiff is

entitled to the $188,000 life insurance policy offered to Mr. Rizzo.

<u>**ORDER**</u>

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

**IT IS** on this 23 day of October, 2019,

**ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 27) is **DENIED**; and is further

**ORDERED** that Plaintiff's Cross Motion for Summary Judgment (ECF No. 30) is **GRANTED**; and is further

**ORDERED** that Plaintiff is entitled to the $188,000 offered to Mr. Rizzo under the group life insurance policy; and is further

**ORDERED** that the Clerk of Court is directed to close the case.

_____
PETER G. SHERIDAN, U.S.D.J.